UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMMANUEL A. WINTERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04331-SEB-TAB |
| | ) | |
| SEVIER, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Emmanuel Winters' petition for a writ of habeas corpus challenges his conviction in prison

disciplinary case NCP 19-07-0030. For the reasons explained in this Entry, Mr. Winters' petition

is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning

class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,*

485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018).

The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written

notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial

decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,*

418 U.S. 539, 563-67 (1974).

### B. Disciplinary Proceeding

On July 25, 2019, Disciplinary Hearing Officer ("DHO") T. Thompson wrote a Report of Conduct charging Mr. Winters with a violation of Code A-102, Battery, as follows:

> On 7-25-19 at approx 13:18 I DHO T. Thompson was in the process of having offender Winters, Emmanuel #242936 sign his report of disciplinary hearing on case NCP-19-07-0018 when Winters hit my chin and grabbed my shirt. He attempted to pull me up to the rec. cage. I was able to pull away and fell backwards to the floor. I exited the day room a[nd] found that Winters had also broken the chain on my Saint Michael dog tag. I told Winters he was getting a cond[uct] report.

Dkt. 9-1. Photographs were taken of DHO Thompson after the incident and the broken dog tag, and a copy of the receipt for the necklace's repair from July 27, 2019, was provided to Mr. Winters. Dkt. 9-2 at 2; dkt. 9-3.

Mr. Winters received a Notice of Disciplinary Screening Report notifying him of the charge on July 26, 2019. Dkt. 9-4. He pled not guilty and requested a lay advocate. *Id.* Mr. Winters requested to call Offenders Mark Hughes and Keith Ellis as witnesses to whom he would ask: "Did CAB Thompson call Winters a bitch?" *Id.* Mr. Winters also requested video evidence of the incident and the photographs with the conduct report. *Id.*

Mr. Winters was not allowed to view the video evidence for security reasons, but Lt. L. Storms, the DHO assigned to this disciplinary case, reviewed the video of the incident and summarized it as follows:

> Video was reviewed in case NCP 19-07-0030 between 1309 hours and 1330 hours as requested per Off. Winters, E #242936 and the following was observed. At approximately 1343:43 hours, DHO T. Thompson enters the 700 day-room where Off. Winters is located secured inside the inside recreation cage for his DHB hearing. Mr. Thompson returns to the rec cage to provide Off. Winters the opportunity to sign the documentation from the conduct hearing just held and as Mr. Thompson approached the rec enclosure Off. Winters appears to throw a punch at Mr. Thompson with his right hand and then appears to have grabbed a hold of Mr. Thompson where I observed a brief struggle and Mr. Thompson was able to get away from the grip of Off. Winters and then exited the day-room at approximately 1315:12 hours.

Dkt. 9-6. The Court has reviewed the video footage provided for *in camera* review and finds that the summation provided accurately depicts the events that occurred.

> On July 25, 2019, Offender Ellis provided the following statement:

> At the time of the incident I was in the shower across from Offender Hughes when I heard DHO Thompson tell Offender Winters that he wasn't shit but a bitch. Then a heated argument went back and fourth, then DHO Thompson came toward the rec cage on 700 range in an aggressive manner.

Dkt. 9-8 [sic].

> On July 26, 2019, Offender Hughes provided the following statement:

> Yes, and before (and after CAB) Thompson was verbaly and artibrarly negitive, and even use that 'N' word on top of calling this man a 'straight up punk' and a 'Bitch,' not even human or worth his CAB Hearing time. This was all racialy said after the 'NIGGA' stuff in derogatory racial ephatat slurage.

Dkt. 9-7 [sic].

Mr. Winters' disciplinary hearing was held on July 31, 2019, and he made the following statement: "I am not guilty. I did not commit a Class A 102. I am guilty of A B I did that, They did not change the Disciplinary Codes." Dkt. 9-5. The DHO reviewed the staff reports, statement of offender, and the physical evidence including photos, video, and the dog tag receipt and found Mr. Winters guilty. *Id.* The sanctions imposed included a deprivation of 180 days' earned credit time. *Id.*

Mr. Winters appealed to the Facility Head and the Indiana Department of Correction ("IDOC") Final Reviewing Authority, but neither appeal was successful. Dkt. 9-10; dkt. 9-11. He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1.

**C. Analysis**

Mr. Winters raises the following grounds in his petition: (1) he was denied an impartial decision-maker; (2) he was denied physical evidence; (3) the video summation does not match the

conduct report; and (4) Code A-102 requires a weapon or serious bodily injury and neither of those elements occurred. Dkt. 1 at 2-6.

The Court additionally notes that the petitioner raises a number of new issues in his reply including his claims of a right to a lay advocate, his inability to view the video of the incident is in violation of the state open records act, and the mental health staff was biased for finding that his mental health diagnoses did not contribute to his behavior. Dkt. 15 at 1-2. The Court need not consider these arguments. "[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived." *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020); *see also Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived.").

### 1. Failure to Exhaust

The respondent argues that Mr. Winters failed to exhaust his administrative remedies as to ground (4), and this ground is now procedurally defaulted. Dkt. 9 at 12-14. The Court has reviewed Mr. Winters' appeals and finds that Mr. Winters did not raise ground (4), his argument that he was charged with the wrong offense because Code A-102 requires use of a weapon or serious bodily injury. Mr. Winters did not provide any explanation as to why he did not raise these grounds in his appeals in his petition.

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of "cause and prejudice or a miscarriage of justice (meaning conviction of an innocent person)" has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d

978, 981 (7th Cir. 2002). Mr. Winters has not shown cause and prejudice. Accordingly, habeas relief on ground (4) is **denied.**

### 2. Impartial decision-maker

Mr. Winters argues that he is entitled to a hearing before an impartial decision-maker, "one whose mind is not already made up and who can give me a fair hearing." Dkt. 1 at 3. He further states that his conduct report was issued by DHO Thompson. *Id.* In his reply, Mr. Winters contends that DHO Storms and DHO Thompson have a personal friendship outside of their employment. Dkt. 15 at 2.

A prisoner in a disciplinary action has the right to be heard before an impartial decision maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Simply put, Mr. Winters has not presented clear evidence to overcome the presumption that his hearing officer was impartial. DHO Thompson was not the DHO in this disciplinary proceeding – but the individual who witnessed and was victim of Mr. Winters' conduct. DHO Storms presided over Mr. Winters' disciplinary hearing in this matter. Moreover, bias is not shown simply because T. Thompson's role was that of being a DHO at the facility. Mr. Winters presents

merely conclusory statements that the DHO was biased and had a personal friendship outside of work with the reporting officer. Mr. Winters provides no evidence of such personal relationship but rather says this information was told to him by another unidentified staff member. Dkt. 15 at 2. The Court finds no evidence in the record that suggests that DHO Storms directly or substantially participated in the factual events or investigation underlying Mr. Winters' disciplinary charge. Furthermore, the Court finds no evidence in the record that suggest that the two DHOs had a disqualifying relationship that would overcome the presumption of impartiality. *See, e.g., Eads,* 280 F.3d at 729 (noting that a prisoner's due process right to an impartial decision-maker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.).

Accordingly, Mr. Winters' request for relief on this ground is **denied**.

### 3. Denial of evidence

Mr. Winters asserts that he was denied physical evidence that he requested that "would prove an assault was committed." Dkt. 1 at 3. For the first time, in his reply, he specifically argues that he was denied the ability to view the camera footage and was not provided with the pictures taken at the time of the incident and included with the conduct report. Dkt. 15 at 1-2. As previously discussed, newly raised arguments in a reply brief are waived.

Even if these new arguments were not waived, the prison staff is not required to produce to a petitioner video footage or photographic evidence. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th

6

Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). As the petitioner, it is Mr. Winters' burden to establish that any evidence he was denied was material and exculpatory. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Winters has not met this burden.

Both video and photographic evidence exist in this case. The DHO reviewed the video footage and provided a summation. The Court has reviewed the *ex parte* filing of the video at docket 10 and finds no exculpatory evidence. Likewise, the Court finds no exculpatory evidence from the photographs taken after the incident of DHO Thompson and his broken dog tag.

Accordingly, habeas relief on this ground is **denied.**

### 4. Sufficiency of evidence

Finally, Mr. Winters argues that the report made against him was false because DHO Storms wrote that he reviewed the video between timestamps 13:09 and 13:30, DHO Thompson entered the dayroom location at 13:43, and DHO Thompson stated he was assaulted by Mr. Winters at 13:18. Dkt. 1 at 3. The Court construes Mr. Winters' argument that the video summation written by DHO Storms does not match the conduct report written by DHO Thompson as one that cuts to the sufficiency of the evidence.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat*, 288 F.3d at

981. "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The respondent argues that the timestamp noted on the video summation is a scrivener's error as the video "shows Winters striking Thompson and then Thompson falling to the floor." Dkt. 9 at 13. The Court agrees and finds that the video is only one example of providing "some evidence" to support Mr. Winters' charge of battery – regardless of a typographical mistake in recording the exact time of the assault.

Accordingly, habeas relief on this ground is **denied**.

**D. Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Winters to the relief he seeks. Accordingly, Mr. Winters' petition for a writ of habeas corpus must be **denied** and the **action dismissed** with prejudice.

Final Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:    9/10/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

EMMANUEL A. WINTERS
242936
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov